IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 8, 2003 Session

## RICK KYLE v. EARL WILLIAMS and MICHELLE WILLIAMS

**Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Monroe County
No. 12614   Jerri S. Bryant, Chancellor**

---

**No. E2002-00091-SC-R09-CV - Filed March 3, 2003**

---

We granted the plaintiff's application for permission to appeal to determine whether the Chancellor erred in holding that a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b), and therefore is limited to a recovery of documented expenses proven by clear and convincing evidence, where the contractor possessed a valid contractor's license when the contract was formed but did not maintain a valid license throughout the entire time contracting services were performed under the contract. After carefully considering the relevant statutes, we conclude that the Chancellor properly held that a contractor who does not maintain a valid license throughout the entire contract period is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) and limited to a recovery of documented expenses proven by clear and convincing evidence.

**Tenn. R. App. P. 11; Judgment of the Trial Court Affirmed; Case Remanded**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Van R. Michael, Sweetwater, Tennessee, for the appellant, Rick Kyle.

H. Chris Trew, Athens, Tennessee, for the appellees, Earl Williams and Michelle Williams.

## OPINION

### Background

The plaintiff, Rick Kyle, filed a complaint asserting that he had entered into a contract with the defendants, Earl and Michelle Williams, for the construction of a house and that the defendants had refused to pay the balance due under the contract. The defendants filed an answer denying any liability under the contract on the basis that the plaintiff did not have a valid contractor's license when the house was under construction and also that the plaintiff had failed

to construct the residence in a good and workmanlike manner and in accordance with the plans and specifications of the contract.

Prior to trial, the parties asked the Chancellor to determine whether the plaintiff was an "unlicensed contractor" for purposes of Tennessee Code Annotated section 62-6-103(b), which provides that "[a]ny unlicensed contractor covered by the provisions of this chapter shall be permitted in a court of equity to recover actual documented expenses only upon a showing of clear and convincing proof."

The facts pertinent to this issue were stipulated by the parties and incorporated in the Chancellor's January 4, 2002 order as follows:

1.  The parties entered into a contract November 11, 1997 which provides that the plaintiff will construct a residence for the defendants for a contract price of $80,000.00.
2.  The plaintiff had a valid contractor's license on November 11, 1997.
3.  The contractor's license of the plaintiff expired January 31, 1998.
4.  The plaintiff performed contracting work under the contract from February 1, 1998 through April 19, 1998.
5.  The plaintiff filed for renewal of his contractor's license on or about May 5, 1998.

The Chancellor concluded that a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) if the contractor does not maintain a valid contractor's license throughout the entire time contracting services are performed under the contract. Since the stipulated facts indicated that the appellant did not have a valid license while performing contracting services after January 31, 1998, the Chancellor held the plaintiff was an unlicensed contractor, entitled to recover actual documented expenses only upon a showing of clear and convincing proof pursuant to Tennessee Code Annotated section 62-6-103(b).[1]

In order to avoid needless, expensive, and protracted litigation and to develop a body of law interpreting Tennessee Code Annotated section 62-6-103(b), the Chancellor granted the plaintiff's application for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. The Court of Appeals, however, denied the plaintiff's request for an interlocutory appeal. Thereafter, this Court granted the plaintiff's application for permission to appeal, and for the following reasons, we now affirm the judgment of the trial court.

## Standard of Review

The issue in this appeal is a question of law involving both statutory interpretation and the application of the statute to undisputed facts. Our review is de novo with no presumption of

---

[1]In light of this conclusion, the Chancellor found that the precise date on which work under the contract began was not relevant or determinative. The plaintiff had contended that work began on or about January 12, 1998, before expiration of his license, while the defendants contended work began on February 1, 1998, after the plaintiff's license expired.

correctness attached to the judgment of the trial court. See Ki v. State, 78 S.W.3d 876, 879 (Tenn. 2002); State v. Troxell, 78 S.W.3d 866, 870 (Tenn. 2002).

## Rules of Statutory Construction

Resolution of the issue in this appeal requires a review and interpretation of several statutory provisions. The duty of this Court in construing statutes is to effectuate legislative intent. See State v. Alford, 970 S.W.2d 944, 946 (Tenn. 1998); Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997); Wilson v. Johnson County, 879 S.W.2d 807, 809 (Tenn. 1994). Legislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used. See State v. Walls, 2 S.W.3d 119, 121 (Tenn. 2001). Where the language used is devoid of ambiguity, we must apply its plain meaning without a forced interpretation that would limit or expand the statute's scope. Id. In short, this Court must presume that the legislature says in a statute what it means and means in a statute what it says. Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000).

We begin with Tennessee Code Annotated section 62-6-103(a) which provides that any person engaged in "contracting" shall submit "evidence of qualification to engage in contracting" and "shall be licensed as hereinafter provided." The term "contracting" is defined by statute as "any person or entity who performs or causes to be performed any of the activities defined in" Tennessee Code Annotated section 62-6-102(3)(A) & (6).[2] Therefore, pursuant to Section 62-6-102(3)(A), a license is required for

> any person or entity who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement, or any other construction undertaking for which the total cost of the same is twenty-five thousand dollars ($25,000) or more.

Tenn. Code Ann. § 62-6-102(3)(A). A license also is required for "one whose services are limited to construction, remodelling, repair, or improvement of one (1), two (2), three (3), or four (4) family unit residences not exceeding (3) stories in height and accessory use structures in connection therewith." Tenn. Code Ann. § 62-6-102(6).

The plaintiff advances three reasons to support his argument that these statutes allow a contractor to recover under the terms of the contract if the contractor had a valid license at the time the contract was formed and work began, even if the license expired before the work was completed. First, the plaintiff says that any other rule would unjustly enrich the defendants by allowing them to retain possession of the house but pay less than the agreed upon price. Second,

---

[2]See Tenn. Code Ann. § 62-6-102(2).

according to the plaintiff, limiting the contractor's recovery in such situations to only those documented expenses proven by clear and convincing evidence would impose a disproportionate penalty for what he describes as a technical violation of the licensing statutes. Finally, the plaintiff says that statutes should not be construed to alter the common law further than the act expressly declares, and relying on a treatise, the plaintiff asserts that an unlicensed contractor at common law could recover either the agreed upon contract price or the reasonable value of the benefits received and retained.

Contrary to the plaintiff's assertion, courts of Tennessee for many years held that an unlicensed contractor had no right to recover under the contract. See Farmer v. Farmer, 528 S.W.2d 539, 541 (Tenn. 1975) ("There is in this State a long, unbroken line of authorities back to the year 1888 to the effect that those unlicensed cannot enforce their contracts.") (citing cases). Moreover, prior to the enactment of Section 62-6-103(b), unlicensed contractors had no right to recover based on quantum meruit – the reasonable value of the benefits received and retained. See id. at 542 ("[I]n our jurisdiction, quantum meruit has been specifically considered and rejected."). In explaining these rules, this Court in Farmer adopted the following rationale from a decision of the Washington Supreme Court:

> The [contractor's licensing] statute was designed for protection of the public. The overriding public policy must not be defeated by an attempt to accommodate one who has violated its specific provisions, albeit unwittingly. The law will be nullified if noncomplying contractors are permitted to evade the statute by a claim of 'unwitting violation' or 'undue loss' or by a claim that the other contracting party will be 'unduly enriched.' Every noncomplying contractor could raise one or all of the suggested defenses. The remedy for those who find themselves in the position of appellant lies with the legislature.

Id. at 542 (quoting Stewart v. Hammond, 471 P.2d 90, 92 (Wash. 1970)). Therefore, the statutory provision allowing unlicensed contractors to recover only documented expenses proven by clear and convincing evidence is an *expansion* of the remedies previously available to unlicensed contractors in Tennessee. See Chedester v. Phillips, 640 S.W.2d 207, 209 (Tenn. 1982) (stating that the "harsh rule of Farmer" had "previously barred unlicensed general contractors from recovery either on the contract or on *quantum meruit*" and noting that the General Assembly had alleviated that rule by enacting a statute permitting unlicensed contractors to recover documented expenses proven by clear and convincing evidence). Thus, the rule that a statute should not be construed to alter the common law further than the act expressly declares actually undercuts, rather than supports, the plaintiff's position.

Also without merit are the plaintiff's contentions that principles of quantum meruit and unjust enrichment should preclude this Court from affirming the Chancellor's holding that a contractor must maintain a valid license for the duration of the contract. In our view, the language of the licensing statutes, particularly Sections 62-6-102(3)(A) & (6), is crystal-clear and requires no interpretation. "Contracting" encompasses all phases and aspects of construction — from contract formation through the contract's completion. Any person or entity who engages in any of the activities classified as "contracting" must submit evidence of qualifications

and be licensed. See Tenn. Code Ann. § 62-6-103(a). If a person engages in any of these activities without possessing a valid license, then simple logic dictates that the person is an unlicensed contractor for purposes of Tennessee Code Annotated section 62-6-103(b) and is limited in recovery to those documented expenses proven by clear and convincing evidence.

The General Assembly long ago determined that persons engaged in construction must be licensed "in order to safeguard life, health and property, and to promote public welfare."[3] Likewise, the courts of this State have recognized that the purpose of these contractors' licensing statutes is to protect the safety and property of the public. See Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust, 611 S.W.2d 572, 576 (Tenn. 1981); Farmer, 528 S.W.2d at 542; Winter v. Smith, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995). Simply possessing a valid license at the time a contract is formed or at the time work begins is not sufficient to satisfy either the letter or the purpose of these statutes. "Contracting" is defined to encompass all stages and activities of a construction project. The statute expressly requires persons engaging in *any* of these activities to be licensed. As the defendants point out, the purpose of the contractor's licensing statutes is not to test a person's contract drafting abilities but to ensure that the person is qualified to perform the work required to fulfill the terms of the contract. Furthermore, construction projects can, and often do, extend over a period of years. Given this reality, it would be nonsensical to interpret these statutes as only requiring a license at contract formation when the bulk of the contracting activity at which these licensing statutes are directed would be performed after the license had expired.

**Conclusion**

Based on the plain language of the statutes, and in light of the purpose these statutes are designed to serve, we conclude that the Chancellor correctly held that a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) if the contractor does not maintain a valid contractor's license throughout the entire time contracting services are performed under the contract. It is undisputed that the plaintiff's contractor's license expired before completion of the work required by the contract. Therefore, the plaintiff is an unlicensed contractor for purposes of Tennessee Code Annotated section 62-6-103(b). Costs of this appeal are taxed to the plaintiff Rick Kyle, for which execution may issue if necessary. This case is remanded to the trial court for further necessary proceedings, consistent with this opinion.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE

---

[3]Act of Feb. 28, 1945, ch. 135, § 1, 1945 Tenn. Pub. Acts 416, 417 (codified at 4 Williams Code of Tennessee § 7182.25 (Supp. 1952)).